The case having been tried as one for permanent injuries, the statement of the plaintiff may be regarded as amended accordingly, and the judgment will be a bar to any future action against the city of Lancaster by the plaintiff, or her successors in title, for the pollution of the stream: Thompson v. Citizens' Traction Co., supra.

Judgment affirmed.

## Kreider's Estate.

*Husband and wife—Real estate—Title in husband—Contribution of purchase money by wife.*

Where a husband receives from his wife moneys of her separate estate which he applies with her knowledge, consent and approval to the purchase of real estate in his own name for their joint occupancy and use, neither the wife nor her representative after her death can recover such money from the husband.

Argued May 16, 1905.    Appeal, No. 36, Jan. T., 1905, by Susan B. Kreider, from decree of O. C. Lancaster Co., Sept. T., 1904, No. 59, dismissing petition to file an account in Estate of Elizabeth Kreider.    Before MITCHELL, C. J., FELL, BROWN, POTTER and ELKIN, JJ.    Affirmed.

Petition for an account.

SMITH, P. J., filed the following opinion:

This action is in the form of a bill in equity filed by Susan B. Kreider, the only surviving child of Elizabeth Kreider, the decedent, against her father, Benjamin Kreider, as the administrator of the estate of her mother, for the purpose of having the confirmation of his account opened and him surcharged or directed to file an additional account, also to have him give bond in the sum of $5,000, and further for a restraining order to enjoin John A. Knosp from paying over to Benjamin Kreider $2,500 secured by him to him on a mortgage.

We find that when Benjamin Kreider married Elizabeth Kreider she owned certain real estate, which was subsequently

sold for $1,800 ; that this money, less $175, the price of a horse
owing by him to Wilson Brubaker, the vendee, was on April
2, 1883, turned over by Samuel Brubaker, a brother of both
the decedent and the vendee, and apparently acting for both,
to Sarah A. Long on account of the purchase money of a tract
of land, then conveyed by her to the respondent for the con-
sideration of $7,000, which was satisfied by the money thus
turned over, a payment of $1,375 for the respondent, and the
confession of a judgment by him to her for the balance of.
$4,000 ; that on March 24, 1893, the decedent received from
the estate of an uncle $1,571.69 ; that on that day a check for
that amount was given her ; that with the respondent she took
it to the bank at which he dealt, where it was deposited to his
credit ; that a few days later, April 1, 1893, the respondent
gave a check for $1,856.64 to Sarah A. Long ; that this was
a payment on account of the balance of the purchase money
for the property conveyed to him ; that $3,196.69 of the money
which had been the decedent's went into this property, which
was bought for and was the home of both the decedent and the
respondent, as well as the complainant ; that at the time of
her marriage, Elizabeth Kreider also had household effects,
which, when she died, the respondent admits were worth about
$150 ; that he now has these goods in his possession ; that
Elizabeth Kreider died intestate April 3, 1894 ; that letters of
administration on her estate were granted to Benjamin Kreider,
August 13, 1900 ; that on September 15, 1900, he filed what
was called an administrator's account ; that it is a paper hav-
ing the form of an account, wherein he charges himself with
nothing and asks credit for $19.35, the price paid for the
privileges of paying that amount as costs ; that respondent
sold the property April 1, 1903, for the sum of $4,500 ; that of
the proceeds thereof, $2,500, he lent to John A. Knosp, se-
cured by a mortgage ; and that Susan B. Kreider arrived at the
age of twenty-one years on April 27, 1904.

The facts thus far found are free from entangling problems.

The complainant avers that the decedent turned over the
$1,800 to the respondent with the understanding that the
property was to be purchased for her—that she was to be
the grantee named in the deed. Nothing do we find in sup-
port of this contention. On the contrary, the evidence leads

us to the conclusion that the respondent became the grantee, and decedent's money was used with her full knowledge and approval. It does not appear whether she was or was not present at the time the deed was delivered, but it does appear that her brother, Samuel Brubaker, the principal witness called by complainant, was present, and was the person who handled the money and the checks. The inference is irresistible that she knew the price to be paid for the property bought from Sarah A. Long, that her contribution was only a fraction of it, and no less probable is it that she also knew it was necessary for her husband to obligate himself for more than half of the purchase money. Had she become the purchaser, from her would have been required security sufficient for the unpaid balance. That she was informed and approved of the transaction is confirmed by her act in taking the money she inherited later from an uncle and having it deposited to her husband's credit that he might pay it to the grantor. What her purpose was is inferential, but any other conclusion would be inconsistent with her conduct, coupled with the fact that that was exactly what he did with it a few days later. Much emphasis was laid on John H. Shreiner's testimony, which is as follows :

" Q. What did you hear Mrs. Kreider say in the presence of Mr. Kreider in regard to the property being in his name and not in hers, if anything ? A. Well, they had some trouble about it, and he came to my house one night once around one o'clock, and he called to me, and I asked who was there, and he asked if I would not come over; he said his wife wants him to bring me ; they had some difficulties. I asked him what it was about, and he said about their matters, about their money matters, and then I went along with him over. When I got over Mrs. Kreider was in the dining-room, and then they commenced to fight. She said she had money, and he said she had none. She said she had a property that she got $1,800 for it, as near as I can tell. Then she said she had some money she got from her brother. She said she had $3,500 nearly, and that this money was used to buy this property, and she thought the property was in her name, and she wanted him to fix it that way when she found out it wasn't. Of course, he did all he could to prevent her from saying this."

" Q. In what way did he try to prevent her ? A. She

wanted to say something and he would say it was not so. Finally I told him to let her say what she wanted to. He didn't hurt her or strike her. Finally I got him to leave her to tell her story, and then I left. And that is what she said."

At best this can carry no more weight than if the decedent herself had been the witness, and the respondent had denied her statement. No doubt, her declarations were substantially repeated, and their effect is to exhibit Benjamin Kreider's subserviency to his wife. A man who can be sent out of his house by his wife after midnight to fetch a neighbor from his bed that he may hear her berate him is not the kind of husband who is likely to misapply her funds, nor is she the wife to permit it even if he had the temerity to make the attempt. We are entirely satisfied that the property was conveyed to Benjamin Kreider with the full knowledge and approval of his wife, and that she unconditionally made her contribution for the purpose of securing a home. We also find that there was no actual or implied trust. There is no " clear, precise, convincing and satisfactory " evidence to support a trust. It does not measure up to a standard necessary to satisfy the conscience of a chancellor. Unquestionably, her money was invested in the property, and there is a multitude of decisions fixing the broad principle that a husband becomes his wife's debtor when he receives her money, and the burden is on him to show that it was not a loan. Even her silence at the time he gets it is insufficient to raise the presumption of a gift to him. There is also an exception to this general rule.

In Gleghorne v. Gleghorne, 118 Pa. 383, it was held that where a husband used his wife's money at her request in building a house as a home for them, and where there were no circumstances indicating the relationship of debtor and creditor, the wife may not reclaim the money from him. This was a bill in equity by the wife against her husband to recover money under the conditions recited. Referring to Johnston v. Johnston, 31 Pa. 450, Mr. Justice PAXSON, in delivering the opinion of the court, said : " There the wife's money was received by the husband under circumstances very similar to those existing in this case, and was appropriated by him at her request towards the fitting up of a house for her own comfort, and that of her family, and the court held that she

could not recover it back in an action against her husband's administrator. I am unable to see any material distinction between fitting up a house as a home, and assisting in building a house for a home. In each case the wife expected to use and enjoy the fruits of her money in a home which she would occupy in common with her husband. In the case in hand the money may have been unwisely employed. But the law cannot supply wisdom to those who lack it, nor can it remedy all the mistakes which a man or a woman may make in the course of a lifetime. In the present case, the wife evidently contributed this money for the completion of a house which was to be her home without a word or a thought about repayment. The husband cannot be treated as her trustee because he appropriated the money as she directed. . . . . This is entirely inconsistent with a loan, or with a trust on the part of her husband." See also Heck's Estate, 11 Mont. 66.

While there is no direct testimony that the decedent's money was used at her positive request, nevertheless, the facts and circumstances surrounding this case proclaim a request with more force than mere words. A request is " the act of asking for anything desired; expression of desire." Elizabeth Kreider's acts signify the request: they indicate such a desire.

Elizabeth Kreider could not have recovered this money; neither can anyone else. This seems to be consistent with what we believe ought to be and is the law.

While we no longer have the coerced and subordinated married woman, and legislative enactments have emancipated her and given her an identity independent of her husband, yet the community of the marriage relation has not been entirely suspended or destroyed.

Exact justice has been too frequently defeated by married women who consciously or unconsciously do not define their money relations with their husbands until discord or misfortune enters their home. When full of ardor and responsive affection, they willingly permit their property to pass into their husbands' hands, indifferent as to the uses to which it may be put, unrestricted by condition or written obligation, and often as gifts. If later, the matrimonial relation becomes less compatible, or the husband is beset by creditors, intuitively they

discover that the transaction was not an implied or actual gift, but a loan or resulting trust.

The $175 of the decedent's money with which the respondent paid for a horse is owing by him.

We would not call the paper exhibited in the register's office, September 15, 1900, by Benjamin Kreider, administrator of the estate of Elizabeth Kreider, deceased, an account. In filing that paper he was not well advised. There is nothing about it to open, to review or set aside. There are, however, sufficient reasons, supported by ample authority, why he should file an account, or, if this conclusion is not acceptable, an additional account.

This cause came on to be heard at this term, and was argued by counsel; and, therefore, upon consideration thereof, it was ordered, adjudged and decreed as follows, viz. : That Benjamin Kreider, as administrator of the estate of Elizabeth Kreider, deceased, give an additional bond in the sum of $650 and file an account on or before February 18, 1905, of the goods and chattels which were of Elizabeth Kreider and which came or should have come into his hands ; and that complainant's bill in other respects is dismissed. The costs of this proceeding to be paid by Benjamin Kreider.

*Errors assigned* were the decree of the court and certain findings of fact.

*Coyle & Keller* and *L. N. Spencer*, for appellant.

*W. U. Hensel*, with him *Harnish & Harnish*, for appellee.

PER CURIAM, June 22, 1905:

This decree is affirmed on the opinion of the court below. Costs of the appeal to be paid by appellant.